## H. W. FITCH v. A. B. BURK.

### Trover. Sale. Title. Contract. Trees.

A. sold B., the plaintiff, " one hundred cords of wood in the trees standing " to be taken clean except oak and ash from one side of A.'s land until the amount was cut; " the quantity to be ascertained by piling and measuring the wood as it was cut." The wood was cut and piled on A.'s land. Part of it was drawn off. The remainder was attached by the defendant as A.'s property. *Held*, that it was not liable to attachment on A.'s debts.

It does not come within the Vermont rule which requires a change of possession in order to protect property, after sale, from attachment on the vendor's debts; because as movable property A. never owned it; and the rule does not apply to immovable property.

Where a measurement is contemplated by the parties, the sale does not remain incomplete until the measurement is made, if it is the intention of the parties that the property shall pass before, and that the amount shall be subsequently determined by a measurement of the product of the article when changed in form. Therefore the provision with regard to measurement in this sale does not operate to continue the ownership in A. until after measurement.

This was not a sale of cordwood, but of a right to manufacture it out of the standing trees. As fast as manufactured by the expenditure of B.'s labor and capita it was B.'s property. Nor is the case changed by B.'s employing A. to assist in cutting the wood and he acquiring no control over it.

The case *Buck* v. *Pickwell*, 27 Vt. 158 approved. But *semble*, that while a contract for the future growth of trees and the beneficial use of the land for that purpose, for a series of years, or during the pleasure of the vendee, is, as there held, a contract relating to real estate; an ordinary purchase of stumpage by the foot or cord, in contemplation of an early removal as chattels, would be different.

TROVER for a quantity of wood. Plea, the general issue, and trial by jury, May Term, 1865, Barrett, J. presiding. The facts are fully stated in the opinion. The court having instructed the jury that if they should find that the contract of the plaintiff with Nutting, who sold the wood, was for one hundred cords of wood in the trees standing, followed by a separate contract for chopping, in no way affecting the contract of purchase, then there was no need of a removal of the wood from the land of Nutting by the plaintiff in order to give him a valid title as against the attachment of Nutting's creditors, the defendant excepted. Verdict for the plaintiff.

*Washburn & Marsh*, for the defendant.

The defendant insists that the attachment of the wood in question was valid. The contract between Nutting and the plaintiff was, in law, a sale of cord-wood; and its legal character, as a sale of per-

sonal property, is not varied by the fact, that it was then attached to the realty. For the purpose of construction the law looks only to the form of the property at the time the contract of sale becomes operative and effective. *Gorham* v. *Fisher et al*, 30 Vt. 428; *Smith* v. *Surman*, 9 B. & C. 561, ( 17 E. C. L. 443 ); Brown on St. of Frauds, 252, § 249; 259–60, § 255; 262, § 257; *Rodwell* v. *Phillips*, 9 M. & W. 505; *Claflin* v. *Carpenter*, 4 Met. 580; *Nettleton* v. *Sikes*, 8 Met. 34; *Douglass* v. *Shumway*, 13 Gray, 502. The decision of this question, under the terms of the contract stated, is not controlled by the case of *Buck* v. *Pickwell*, 27 Vt. 158, where the purchaser of the trees was allowed an unlimited time for their removal, and the form of the action which he brought required him to prove *title* to the land. Browne on St. of Frauds 240, § 237; 261, § 257. But if this is to be regarded as a contract for an interest in land, it was none the less a sale of personalty,—for by the very act of sale the trees became in law severed from the realty. Browne on St. of Frauds 239, § 236; *Bank of Lansingburgh* v. *Crary*, 1 Barb. 547; *Warren* v. *Leland*, 2 Barb. 613; 3 Bac. Abr. 64. And although it may be true that, if the contract had been completed, it was a sale of personalty which could not be moved, and so not subject to the rule requiring change of possession to render the sale valid against the creditors of the vendor, yet the sale was not in fact completed, and no property passed, until the trees had been severed, cut into cord-wood, piled and measured. *Warren* v. *Buckminster*, 4 Foster, 336; *Messer* v. *Woodman*, 2 Foster, 172; *Shepley* v. *Davis et al.*, 5 Taunt. 617, ( 1 E. C. L. 211 ); *Wallace et al.* v. *Breeds et al.*, 13 East, 522; *Stevens et al* v. *Eno*, 10 Barb. 95; 1 Par. Con. 441. And, as a contract within the statute of frauds, there was no memorandum, and therefore no property passed, until the trees were severed, and then it was personalty. *Yale* v. *Seely et al.*, 15 Vt. 221, explained in *Buck* v. *Pickwell*, 27 Vt. 166. The case, then, presents all the elements necessary to render the attachment valid. The trees, from which the cord-wood, which was the subject of the sale, was to be prepared, stood upon the land of Nutting,—they were by him cut, converted into cord-wood, piled and measured, upon his land,—and he had the *actual possession* and the *apparent ownership* from the time the contract was completed to the time of the attachment. The fact

that the agreement with Nutting to convert the trees into the form, in which the sale required them to be prepared, was subsequent to and independent of the contract for the purchase, does not affect the question any more than it would if the sale had been of a horse, delivered, and subsequently returned into the possession of the vendor for use or agistment. And the fact, if it were true, that the attaching creditor had notice of the sale is of importance. *Hutchins et al.* v. *Gilchrist et al.*, 23 Vt. 89 ; *Perrin* v. *Reed*, 35 Vt. 8. That Nutting " had no use of the wood, nor exercised any care or control of or over it," after.it was measured, does not affect the right of the attaching creditor. The change of possession, to be available against creditors, must be not only substantial, but *visible.* *Sleeper* v. *Pollard*, 28 Vt. 709 ; *Flanagan* v. *Wood et al.*, 33 Vt. 342 ; and the *apparent possession* of the wood and the *apparent credit* therefrom resulting remained as much in Nutting, as it could in any case, where cord-wood has been cut and piled in the woods by the owner of the land and left remaining there through the summer.

*Converse & French*, for the plaintiff.

I. The contract when made related to real estate. The doctrine of "*fraud in law*," does not apply to "*real estate*." *Buck* v. *Pickwell*, 27 Vt. 157 ; *Yale* v. *Seely et al.*, 15 Vt. 221 ; Bennett's Justice, p. 37 ; *Ellison et al.* v. *Brigham*, 38 Vt. 64 ; *Hackett* v. *Callender*, 32 Vt. 97 ; *Perrin* v. *Reed*, 35 Vt. 2. The property was the plaintiff's the moment it was converted into *personal property.* As *personal property* it was never Nutting's but always the plaintiff's. It required no *measuring* to pass the *title* but simply to ascertain the amount. But if it did, it was measured long before attached.

II. Though the plaintiff had not bought till after the wood was cut and measured and prepared for drawing, it was not subject to attachment by Nutting's creditors. *Sanborn* v. *Kittredge*, 20 Vt. 632 ; *Hutchins* v. *Gilchrist*, 23 Vt. 82. 1st. It was taken possession of by the plaintiff as much as the nature of the property and its situation would admit. 2d. He drew some, and the loss of snow suddenly deprived him of the power to remove the remainder. 3d. It remained there from necessity. 4th. It was cumbrous and could not be removed till snow. Sabin the attaching creditor knew that the plaintiff owned the wood. 5th. Nutting had no use, control or ben-

efit of the same, exercised no acts of ownership.   *Birge* v. *Edgerton,* 28 Vt. 291 ; *Flangan* v. *Wood et al.,* 33 Vt. 332 ; *Parker* v. *Kendrick,* 29 Vt. 388 ; *Ridout* v. *Burton,* 27 Vt. 383.   This doctrine of " *fraud* *in law*," which now finds no existence on earth except in Vermont, will not I trust be extended beyond the limits already prescribed. It is applied only to such cases as where personal property is so situated that with the exercise of common and ordinary diligence, care and prudence an innocent man is liable to be defrauded.   See cases cited above.   If there is anything attending it calculated to put a prudent man upon inquiry, he is bound to inquire.   Sale and execution take it out of the rule.

The opinion of the court was delivered by

STEELE, J.   By a long series of decisions in this state, if the vendee permits personal property, which he has purchased, to remain in the vendor's possession, the sale is held to be void as to the vendor's attaching creditors whether it is in fact fraudulent or not.   The rule is limited to personal property.   The question in issue here is upon the application of this general rule to this case.   The plaintiff sues for the value of sixty-seven cords of wood which the defendant, as an officer, attached upon a writ against one Nutting from whom the plaintiff acquired the title upon which he relies.   The officer found the wood upon Nutting's land where it was cut.   The verdict established that the sale from Nutting to the plaintiff was of one hundred cords of wood in the trees standing, and that the contract under which Nutting was employed by the plaintiff to procure and did procure the wood to be cut by his hired man was independent of the sale and subsequent to it.

The plaintiff was to commence upon one side of two specified pieces of land and take all the trees clean excepting the oak and ash until he should get his one hundred cords—" the quantity to be ascertained by piling and measuring as it was cut."   It was cut, piled and measured by Nutting's man, and the plaintiff drew away a part of it that winter, and on account of the snow leaving earlier than usual failed to draw away the remainder, as contemplated, that season, and it was attached, the following summer, by the defendant.

No question is made but the wood became in fact the plaintiff's property, but the question is whether he held it by a title which with

Fitch *v.* Burk.

out removal of the property from Nutting's land, was valid against Nutting's attaching creditors.

The plaintiff claims in argument that the inaccessibility, by team, in the summer time, of the mountain where the wood was cut—the sudden and unexpected leaving of the snow and the difficulty of removing so heavy an article, bring the case under the rule which obviates the necessity of a substantial and visible change of possession when such a change is impracticable. The question of impracticability does not appear to have been passed upon in the court below and therefore cannot be revised here.

It is also claimed that the contract is for an interest in land and therefore without the rule which requires a change of possession. Whether the purchase was a real or a personal contract is a question involving considerable difficulty and has been thoroughly examined and argued by the counsel. It was held in *Buck* v. *Pickwell*, 27 Vt. 158, that in an action of trespass for cutting and removing trees, where the plaintiff's title to the trees was derived from a parol contract of purchase of the land-owner, made twenty-one or twenty-two years before, of all the timber on certain land to be taken off at any time the vendee should like, though it was expected by the vendor that it would be taken in ten years, the purchase was of an interest in land and within the statute of frauds.

Although there is great conflict in the English cases, and a different rule may seem to have obtained some approval in Massachusetts and some other states,—see *Claflin* v. *Carpenter*, 4 Met. 580—still we are satisfied that this decision, to the extent of the matter decided, is in accordance with the majority of the decided cases and founded upon correct principle. But a contract for the future growth of trees and the beneficial use of land for that purpose for a series of years, or during the pleasure of the vendee, may perhaps be distinguished from an ordinary purchase of stumpage by the foot or cord in contemplation of an early removal or delivery as chattels.

See Browne's Statutes of Frauds, 249, 255, 257, where this distinction is approved and nearly all the cases upon the subject cited and many of them discussed. Such a distinction is made by Lord Abinger in *Rodwell* v. *Phillips*, 9 Meeson and Welsby, 505. In New York the contract has been held to be within the Statute of Frauds,

but when duly made the trees are held to become the vendee's " per-
sonal property, *in contemplation of law, severed from the land.* *War-
ren* v. *Leland*, 2 Barb. 620.   In the case cited PAIGE, J. qualifies the
doctrine as follows: " These observations are to be deemed applica-
ble to a conveyance of the growing trees, standing on the land at the
time of the conveyance, and not to a conveyance of an interest in
any future trees which may grow on the land which might embrace
an exclusive interest in the soil so far as may be necessary for the
support and nourishment of the trees ; and these observations ought
perhaps also to be qualified by an application of them to a convey-
ance of growing trees in prospect of their separation from the soil
within a reasonable time."

What rule may be ultimately adopted in this state upon this sub-
ject it is not our purpose to anticipate at this time.   This case does
not, we think, necessarily require a decision of the question whether
the purchase of growing trees is, under these circumstances, a real
or personal contract, because a change of possession of growing trees
by removal is impracticable and would therefore be as unnecessary
in order to perfect the vendee's title against creditors if regarded as
personal chattels as if regarded as an interest in land.   *Sanborn* v.
*Kittredge*, 20 Vt. 638–9 ; *Hutchins* v. *Gilchrist*, 22 Vt. 82 ;   *Birge* v.
*Edgerton*, 28 Vt. 291.

In this case " the quantity was to be ascertained by piling and
measuring as it was cut," and it is urged that while anything re-
mained to be done the property did not absolutely pass to the vendee ;
and as the measuring was not to be done until the trees were cut into
wood, the plaintiff did not obtain title until it thus became movable
property, and then obtaining it of Nutting, the wood could not be
allowed to remain on Nutting's land without liability for Nutting's
debt ; that the contract was substantially the same as if made simply
for one hundred cords of wood already cut.   But the purchase was
in terms " of one hundred cords of wood *in the trees standing.*"   It
implied permission to enter upon the land and cut it out of the trees
It was not a contract for cord wood, but a contract giving the vendee
the right to make cord wood—to manufacture it of the growing
trees.

It was in contemplation that the vendee should, by cutting the

trees and making them into wood, expend money and labor and entirely change the character and condition of the property, and he should have permission to do this up to the amount of one hundred cords.

Like the sale of a right to cut marble from a quarry or dig ore from a mine, the labor of removal becomes a leading element of its value, and as fast as it is removed it is the purchaser's, severed from the vendor's property.

In any view, as fast as the trees were cut, in pursuance of the contract of sale, we think, they became, until the contract was filled, the property of the plaintiff, exclusively,—accepted by him and under his control, and in his possession. As movable property they were never owned or possessed by the vendor. It is not necessary that the article should be measured before the sale is complete, if it is the intention of the parties that the property shall pass before that time and that the amount shall be subsequently determined by a measurement of the product of the article when changed in form. *Riddle* v. *Varnum*, 20 Pick. 280; 1 Parsons' Contracts, p. 441; *Hawes* v. *Watson*, 2 Barn & Cress., 540; *Macomber* v. *Parker*, 13 Pick. 175.

In *Douglas* v. *Shumway*, 13 Gray, 502, the court held the vendor had no lien for the purchase money upon the wood made of trees he had sold, though still on his land. "The contract of sale," says BIGELOW, J. "contemplated that the vendee should expend labor and money in felling the trees and preparing the wood for market, and the case finds that the wood had been cut by the vendee and a portion thereof sold by him and hauled off the land.

The vendee by himself and his agents had taken it into actual possession and incorporated with it the labor bestowed by him in preparing it for sale. There was therefore such change of possession from the vendor to the vendee, as to defeat any right of lien in the vendor."

In order to make a removal of the wood in this case necessary, there must have been some time when as against the vendee the vendor owned it and had it in his possession and control and not merely upon his land.

---

---

That condition of things we think never existed.

The character of this transaction is not altered by the plaintiff's employing Nutting to manufacture the wood. Nutting was the plaintiff's servant, and as the property was immovable the plaintiff might safely employ Nutting to make it moveable and Nutting would not thereby become seized of any property in it against the employer.

The judgment is affirmed.